IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES                                              PLAINTIFF/RESPONDENT

V.                                    No.  11-50115
                                      No.  13-05051

PARKER KENT                                                DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petitions, (*ECF No.* 75) filed March 12, 2013, under 28 U.S.C. §2255.  The Government filed its

Response, (*ECF No.* 80) on April 23, 2013, and the Petitioner filed his Reply, *(ECF No.* 82) on

May 13, 2013. The undersigned issued a Report and Recommendation (ECF No. 90) on

November 21, 2013 recommending that the Motion under 2255 be Denied and Dismissed with

Prejudice.  The Defendant filed Objections (ECF No. 92) to the R&R on December 10, 2013.

The District Court issued an Order (ECF No. 95) on December 30, 2014 remanding the case to

the undersigned to conduct an Evidentiary Hearing.  An Evidentiary Hearing was conducted on

April 29, 2014 during which the court took testimony from Helga Dunn (Benton County

Deputy), Beverly Jansky (Defendant's mother), Parker Kent (Defendant), and Tim Snively

(Defendant's attorney).[1]

### I.  Background

On December 13, 2011, Parker Kent ("Kent") was indicted on Counts I and II of a five

---

[1]There was technical difficulty during the recording of the Evidentiary Hearing and the full record is stored on three different recordings.  R1 is the testimony of Helga Dunn, Beverly Jansky, and Parker Kent; R2 is the testimony of Tim Snively; and R3 is the closing argument of the attorneys.

count Indictment in the Western District of Arkansas charging him under Count I with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. §846, and under Count II for distributing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. §846.  On February 8, 2012, Kent appeared with counsel, Timothy Snively, and pled guilty to Count I of the Indictment. (ECF No. 35). In the plea agreement, the United States agreed to dismiss Count II. (ECF No. 36, ¶ 1).

A Presentence Investigation Report (PSR) was prepared on April 25, 2012 (ECF No. 47; Government Exhibit 2).  The PSR set forth a base offense level of 34 on account of the drug quantities involved. (PSR, ¶ 33).  However, the probation officer determined that Barker was a career offender under U.S.S.G. §4B1.1 based on Kent's prior convictions consisting of a crime of violence and a felony controlled substance offense. (PSR, ¶ 38). Additionally, Kent received a 3-point reduction for acceptance of responsibility (PSR, ¶¶ 39, 40) resulting in a Total Offense Level of 31 (PSR, ¶ 41). Kent had 15 criminal history points which established his criminal history category as VI. (PSR, ¶ 58). Additionally, Kent was determined to be a career offender and, as a result, his criminal history category was also required to be set at category VI. (PSR, ¶ 59). The resulting advisory guideline range for imprisonment was 188 - 235 months. (PSR, ¶ 87).

Kent appeared with counsel, Timothy Snively, for sentencing on September 18, 2012. (ECF No. 46). The Court then proceeded to sentence Kent to 188 months imprisonment, 5 years supervised release, a $15,000 fine, and a $100 special assessment. (ECF No. 59).

On March 12, 2013, Kent filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the § 2255 Motion) alleging his counsel performed deficiently by failing to file a notice of appeal and for failing to object to prior

convictions being counted under U.S.S.G. § 4A1.2.

## II.  Discussion

The Sixth Amendment of the Constitution of the United States affords a criminal

defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court

"has recognized that 'the right to counsel is the right to effective assistance of counsel.' "

*Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing

*McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel

pursuant to § 2255.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v.

Wyrick,*  642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of

counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made

errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth

Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that

counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*,

539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted.

Second, under the "prejudice" component, he must demonstrate that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694. see also, i.e. *United States v  Ledezma-Rodriguez*, 423

F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective

assistance of trial counsel unless the petitioner can show not only that counsel's performance was

deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

## A.  Failure to File Appeal

The first issue to be resolved by the court is whether the Defendant instructed his attorney to file an appeal.  The Defendant contends his attorney failed to appeal his sentence after being

instructed to do so (ECF No. 75, p. 6) and that he did this by writing to his attorney on September 24 or 25, 2012 "directing him to file an appeal." (Id.). The failure of counsel to take the simple steps required to file a notice of appeal when instructed by his client to do so would constitute 'such an extraordinary inattention to a client's interests as to amount to ineffective assistance of counsel cognizable under Section 2255. *Williams v. U.S.* 402 F.2d 548, 552 (C.A.Mo. 1968).

In this case the Plaintiff stated in his affidavit that "on or around September 24, 2012, I sent via United States Mail a letter to my attorney of record Tim Snively, and requested that he file a notice of appeal so as to address the question of sentencing issues I felt was incorrectly calculate in my PSR." (ECF 75-1).

Ms. Dunn, with the Benton County Sheriff's Office, testified that the mail procedure was to collect the mail from the jail and bring it to the Administrative Offices and then the letters were to be logged into a mail list, Outgoing Mail Book, and entered into a computer per their policy. (Defendant's Exhibit 1). Ms. Dunn acknowledged that she could not locate the Outgoing Mail Book, or the Inmate Mail List and only had the computer print out of the Defendant's Mail Log Report. (Defendant's Exhibit 2). The court also introduced the Benton County Jail Mail Log (Court Exhibit 1) which the court had received from the BCSO. There was no explanation why the reports were not identical but it is undisputed that neither report shows a letter being sent from the BCSO to Mr. Snively on September 24, 2012 although both Exhibits do show a letter being sent by the Defendant to his mother, Ms. Jansky on that date.

Mr. Snively testified that the Defendant never asked him to appeal his sentence after the sentencing hearing. (R2. 0:15:06) He stated that he had never had a defendant request an appeal of a sentence and that would have been such an unusual event that he would have remembered

it.(R2. 0.16.04). He also testified that he never received any request in writing from the

Defendant to appeal. (Id.). Mr. Snively felt that the bottom of the guideline range was a good

outcome for the Defendant. (R2. 0:17:28). Mr. Snively also did not remember Ms. Jansky saying

anything about an appeal after the sentencing hearing and if she had that would have raised a red

flag. (R2. 0:19:25)

      The Defendant testified that he had an opportunity to talk with his attorney after the

hearing and that "we shook hands and he said if I needed anything to contact him."  The

Defendant's evidentiary hearing attorney then asked the Defendant "Did you at that point say

'what I do need is to appeal this sentence'" (R1. 1:12:39). The Defendant responded "No, I didn't

say that right then, no sir." (R1. 1:12:42). The Defendant testified that his only request to appeal

was by letter to his attorney on September 24, 2012, but, as the court has noted, there is no proof

that a letter was actually sent to the Defendant's attorney from the Benton County Detention

Center at anytime after the sentencing date and there is certainly no proof that the Defendant's

attorney ever received express instructions to appeal from the Defendant.

      Ms. Jansky testified that after her son was sentenced he "turned to me and with his mouth

said 'I want an appeal'" (R1: 32:18) and on his way out he said "ask for an appeal" (R1: 32:24).

She then testified that she went back into the courtroom and approached Mr. Snively and told

him that "Parker had asked for an appeal" (R1: 33:00) and that Mr. Snively said that "it really

would not be worth it." (R1: 33:10). She did acknowledge that Mr. Snively was talking with

someone else. Ms. Jansky testified that she called and left messages and did email Mr. Snively

about the appeal.  (R1: 36:11).  Ms. Jansky testified that the sentence the Defendant received was

substantially higher than he expected to receive (R1: 37:10) but did not know what sentence he

expected to receive (R1: 37:26). On cross-examination Ms. Jansky acknowledged that she did not have any copies of the email that were sent to Mr. Snively (R1: 40:46) or copies of any phone bills documenting calls to Mr. Snively (R1: 41:06). She heard the judge tell Mr. Kent that he had 14 days to file an appeal (R1: 41:22) and she knew there was a time limit and did not contact the court about an appeal. (R1:41:54). On examination by the court Ms. Jansky acknowledged that she signed an affidavit in support of the 2255 motion (ECF No. 75-2) which does not state that she ever spoke with Mr. Snively after the sentencing hearing. She stated in the affidavit that "My son who is Parker Kent informed me in September that he had requested that Mr. Snively file a notice of appeal on the issue of criminal history points."  Ms. Jansky testified that she did not know why her testimony about speaking with Mr. Snively after the sentencing hearing was not included in the affidavit. (R1: 46:49). Ms. Jansky did testify that she did not prepare the affidavit but she signed it. (R1: 47:04). Ms. Jansky did admit that the Defendant did not advise Mr. Snively, on the day of sentencing, to file an appeal (R1. 47:52) and he did not say anything to the court (R1. 48:01).  She claimed that neither her son nor she understood his sentence would be 188 months. (R1. 51:06). She did not discuss the guideline range with her son or his attorney. She claimed that she could not get the emails because she had a different computer now. (R1. 52:05). She said that Mr. Snively was talking with another person and she went up to him and said "I thought Parker wanted an appeal" (R1. 53:09) and Mr. Snively said "just tell him it really wouldn't be worth it (R1. 53:13). She admitted that on her next visit to the BCDC she told Parker what Mr. Snively had said. Ms. Jansky testified that the Defendant did not tell her about his concern over the calculation of his points until after he was sentenced. (R1. 54:17-39). Ms. Jansky testified that her son specifically stated that it was "some deal that they had made with

-7-

him that they didn't follow through with, that he was supposed to get a lighter sentence if he had helped them and he said he helped them and they didn't follow through with it." (R1. 55:24). She did not know why he did not place that into his 2255 motion.

The Supreme Court rejected the bright line rule that required counsel to file an appeal unless the defendant specifically instructs otherwise. See *Roe v. Flores-Ortega*, 528 U.S. 470, 478, (2000). There is no question that the Defendant did not request his attorney to file an appeal after the hearing and the Defendant's contention that he communicated his desire for an appeal is not supported by the evidence.  The jail record shows that the jail documented letters to Mr. Snively from the Defendant on March 13, April 25, May 12, May 17, May 24, August 23, August 23, and August 30, 2012. (Court's Exhibit 1). Even if the Defendant wrote a letter to his attorney after the sentencing as he claims the jail record (Defendant's Exhibit 1 and Court's Exhibit 1) clearly show that no letter was sent from the jail to Mr. Snively after sentencing but the log does support his contention that he wrote his mother on September 24, 2012 (Id.).   Mr. Snively testimony was consistent with his Affidavit (ECF No. 80-1) that the Defendant never asked him to appeal and that he never received any communication from the Defendant to appeal.

Ms. Jansky's testimony that she told Mr. Snively after the sentencing hearing that the Defendant wanted to appeal is contradicted by Mr. Snively's testimony and by her previously filed affidavit which only stated that her son had informed her in September that he wanted to appeal on the issue of criminal history points. (ECF No. 75-2).  In addition Ms. Jansky testified that Mr. Snively was talking with another person and she went up to him and said "I thought Parker wanted an appeal" (R1. 53:09) and Mr. Snively said "just tell him it really wouldn't be worth it (R1. 53:13).  The defendant must show that he instructed his counsel to file an appeal.

-8-

See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007).   A bare assertion by the petitioner that he made such a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition. Id. The Defendant also testified that he "thought it did not mater until I moved to Federal system the points keep me from moving to different system." (R1. 1:46:42).

There is no evidence that the Defendant provided an unequivocal instruction to his attorney to appeal his sentence but that fact does not end the inquiry, however, and the court must look at the duty of the attorney  to consult about an appeal.

**B.  Failure to Consult About an Appeal:**

The United States Supreme Court has stated that "[I]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.  Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.  *See Roe v. Flores-Ortega*,  528 U.S. 470, (2000).

It is undisputed that Mr. Snively never asked the Defendant if he wanted to appeal or consulted with him about an appeal so the issue becomes if he had a constitutionally imposed

duty to consult with the Defendant about an appeal and whether "non-frivolous" grounds existed for an appeal.

The Defendant only contended in his 2255 motion that he was sentenced inappropriately because the PSR report assessed 3 points for a conviction that occurred more than 15 years prior to the Defendant's current sentence. (ECF No. 75). This argument was addressed in this court original R&R (ECF No. 90) but will be addressed further based upon the testimony received.  At the hearing the Defendant contended, for the first time that, in addition to the points not being assessed properly,  his attorney should have appealed the calculation of the drug quantity and the fact that he did not receive a 5K1.1 adjustment for substantial assistance.

**1.  Criminal History Score**

The Defendant asserted in his 2255 motion that he received ineffective assistance of counsel because of his attorney's "failure to object to prior convictions being counted under U.S.S.G. §4A1.2". (ECF No. 75, p. 4). The Defendant contends that he was convicted in and sentenced in 1991 on a felony charge to 20 years imprisonment and was paroled from ADC in 1995.  He contends that he was convicted of a different offense in 1998 and sentenced to 204 months but that he was never "revoked" on his 1991 sentence. (Id.).

In his Brief in Support of the Motion to Vacate the Defendant makes it clear that he is not only objecting to the 1991 robbery conviction but also a 1991 Unauthorized Use of Vehicle charge (ECF No. 75, p. 20) which were paragraphs number 47 and 48 of the PSR (PSR, p. 9). The Defendant testified that he circled both of these charges when he went over the PSR with Mr. Snively (R1. 1:05:53) indicating that he objected to them and that Mr. Snively told him he would check on it. (R1. 1:08:11).  He acknowledged that Mr. Snively did explain to him that the

-10-

robbery charge could be counted. (R1: 1:41:44).  The Defendant testified that the charge should not have counted because he was not revoked because when he was sent back to prison in 1998 it was a technical violation and he was incarcerated for "less than six months." (R1. 2:00:32).  The defendant did admit that when he went to the technical violation program in 1998 it was on the robbery charge (R. 2:00:57) and that he was in custody and not allowed to leave. (R1. 2:01:04).

The Defendant acknowledged at sentencing that Mr. Snively had gone over the PSR with him and he was aware of the guideline range. (R1. 1:21:08) and that he told the judge that he was aware that no objections to the PSR had been filed. (R1. 1:23:02). He also stated to the court at sentencing that he was satisfied with his attorney. (R1. 1:23:52).

Section 4A1.2(e)(1) states that "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." Further, Section 4A1.2(k)(2) instructs that in situations where a defendant's parole was revoked, the date of last release from incarceration is used in determining the applicable time period.

The Defendant was convicted in 1992 of Robbery and sentenced to 20 years in the Arkansas Department of Corrections in case number 91-1086 out of Washington County, Arkansas (Court Exhibit 2).  According to the PSR report the Defendant was initially paroled in 1995 on this charge and was revoked on June 15, 1998, October 20, 1998, April 19, 2004, June 15, 2005, October 15, 2007, and on October 24, 2011. (Government Exhibit 2).

Prior to the Evidentiary Hearing the court requested records from ADC to verify the Petitioner's revocations.  These records do show that the Petitioner was paroled initially 12/15/1995 and his parole was revoked March 25, 1998, and October 23, 1998. (ECF No. 91).

-11-

The Defendant testified that the March 1998 violation was a "technical violation" and that his parole was not revoked. The court was offered no proof by the Government or the Defense on this issue, however, the court obtained an Inmate Record Summary from the Arkansas Department of Corrections.  (Court Exhibit 3).  The Inmate Summary contains a section on Parole Board Events which does show a "Revocation Hearing Held" on March 25, 1998 and that the Defendant "Waived Hearing/Par. Revoked".  (Id., p. 16). That same document also shows that the Defendant's Parole was revoked on October 20, 1998 and that he "Waived Hearing/Trf. Revoked". (Id.).  This would correspond to the Defendant's arrest on October 12, 1998 on the charge of Delivery of Methamphetamine, Possession with Intent to Deliver, and Possession of Drug Paraphernalia (Court Exhibit 4).

It is clear from all of the evidence that the Defendant was revoked on his Robbery charge in 1998 but even if the court accepted the Defendant's argument that it was merely a "technical" violation in 1998 and he was not revoked the conviction was still properly included in his criminal history because the Defendant admitted in his testimony that he was "in custody" in 1998 on the robbery charge.  Also, counted under Section 4A1.2(e)(1) are prior sentences resulting "in the defendant being incarcerated during any part of such fifteen-year period."

The subsequent parole revocation or "technical" violation  of the Defendant's Robbery conviction meant that the conviction was properly considered in assessing the Defendant's criminal history.  Any effort by the Defendant's attorney to have the robbery case (91-1086) excluded from consideration in the sentencing calculation would have been without merit. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.*  905 F.2d 218, 219 (C.A.8 (Minn.),1990).

-12-

The PSR also included 1 point for an Unauthorized Use of Vehicle against the Defendant that he claims should have been excluded. The Defendant contends that he was arrested on this charge in 1991 and it was disposed of then and should not have been included.   The United States Probation Office produced for the court a printout from the Fayetteville District Court of the Defendant's History in that court. (Court Exhibit 5 ) which shows this charge was disposed on November 1, 2006 and thus included in the Level computation in the PSR.  The exhibit shows that in addition to the UUV charge the Defendant also had charges of Loitering, Failure to Appear, and No Drivers License which were disposed of on November 1, 2006. All of these offenses have different violation dates and different officers and it would not be likely that the court made a typographical error on all of these offense.  The court notes that the November 2006 disposition  would have corresponded to the Defendant's arrest in Washington County in June 2005 on drug charges and it is possible that the misdemeanor charges were disposed of as a result of a subsequent ADC or Washington County Detention Center incarcerations, but, even if the misdemeanor conviction was not proper included it would not have made any difference because the Defendant was a Career Offender.

The PSR noted that the Defendant would have been classified as a career offender requiring a criminal history category VI. (PSR ¶38 and 59). The Defendant was convicted in 1999 on Delivery of Methamphetamine and Possession with Intent to Delivery Meth-amphetamine in Washington County CR1998-1648 and sentenced to  204 months. (Court Exhibit 6).  The Defendant was also convicted in October 2007 on Possession of a Controlled Substance with Intent to Deliver in Washington County case CR 2007-1513 and sentenced to 60 months in the Arkansas Department of Correction.  (Court Exhibit 7).  Even if the Robbery conviction was

not considered the Defendant would have been a career offender (U.S.S.G. §4B1.1(a) and the guidelines would have required a criminal history of category VI. (Id., §4B1.1(b).

There is no evidence that the Defendant has presented, other than his conclusory allegation, that he was not revoked on his Robbery charge in 1998. Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255. *See Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir.). *See also Smith v. United States*, 677 F.2d 39, 41 (8th Cir.1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal). Mr. Snively could not have considered the calculation of the Defendant's criminal history anything other than a frivolous ground for appeal. The evidence is overwhelming that the Defendant was revoked in 1998 and placed back into custody. The Defendant admits that he was in custody but states that it was only a "technical violation" and not a revocation. Even if the UUV misdemeanor could have been argued it would have been pointless because the Defendant's criminal history required him to be classified at Level VI

## 2. Drug Quantity

The Defendant now argues at the Evidentiary Hearing, for the first time, that his attorney should have appealed the PSR calculation of his drug quantity. In the Plea Agreement (Government Exhibit 1; ECF No. 36) the Defendant admits that it states that the quantity of drugs seized from the Defendant was "342.9 grams of a mixture of a substance that contained 154.9 grams of actual methamphetamine." (Id., p.2, ¶2(d)). The Defendant admits that in the PSR it states that the total amount of meth attributable to him was 356.54 grams and that based upon the 154.9 grams of actual meth the Base Level Offense was 34. (USSG §2D1.1(c)(3)). The Defendant's argument is that he should have received a lower Level because the total weight of

-14-

the mixture was 356.54 grams. The guidelines, however, specifically provide that if the Level

for the weight of the actual controlled substance is greater than the Level for the total weight you

are to use the higher Level. (USSG §2D1.1, Note (B)). The Defendant's argument that his

attorney was ineffective for failing to appeal the issue of the drug quantity assessed to him has no

merit. The court also notes that the defense abandoned this argument at closing.

### 3.  5K1.1 Adjustment

The Defendant did not raise any issue in his 2255 Motion (ECF No. 75) that his attorney

was ineffective for failing to obtain a 5K1.1 Adjustment for substantial assistance. When the

Defendant filed his objections to the R&R (ECF No. 92) he did not list any claim that his

attorney was ineffective for not arguing for a 5K1.1 adjustment nor did the Defendant raise any

such claim in his Motion to Reduce Sentence (ECF No. 89) filed October 24, 2013. The

Defendant stated that he never raised the 5K claim in his pleadings because he would have to

admit that he co-operated with law enforcement and he would be concerned with his safety at the

Bureau of Prisons. (R1.1:02:11).

### a.  Limitations on 5K1.1 claim:

Postconviction motions for relief must be filed within one year from the date that the

judgment becomes final. 28 U.S.C. § 2255(f). Claims made in an untimely filed motion under §

2255 may be deemed timely if they relate back to a timely filed motion as allowed by Federal

Rule of Civil Procedure 15(c). *Dodd v. U.S.* 614 F.3d 512, 515 (C.A.8 (Iowa),2010) *citing*

*United States v. Hernandez*, 436 F.3d 851, 857 (8th Cir.) (concluding that Rule 15(c)'s relation

back rules apply to § 2255 motions), cert. denied, 547 U.S. 1172, 126 S.Ct. 2341, 164 L.Ed.2d

856 (2006).

Here Judgment was entered September 19, 2012 (ECF No. 59) and the Defendant did not raise the issue of his attorney's failure to secure a 5K1.1 consideration until the day his 2255 motion was set for an Evidentiary Hearing on April 29, 2014.  The only issue raise in his 2255 motion was that his attorney did not appeal his sentence base on what the defendant contended was an erroneous criminal history score because the government erroneously counted a 1991 Robbery conviction and a Unauthorized Use of a Vehicle misdemeanor charge.

It does not appear that the issue of the attorney's failure to secure 5K1.1 consideration relates back to the original 2255 motion and is thus the separate issue of ineffective assistance of counsel to move for a 5K1.1 reduction is time barred.  Notwithstanding the time limitations extensive testimony was taken concerning the 5K1.1 consideration and the argument seems to be that Mr. Snively  was ineffective for failing to consult with his client about an appeal on the issue of the 5K1.1 claim. Even is the 5K1.1 argument was not time barred it is without merit.

**b.  Failure to consult about appeal on 5K1.1 motion:**

Both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) permit the government to make a substantial assistance-based motion for a downward departure. *See  Wade v. United States*, 504 U.S. 181, 184-86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (discussing the nature of the discretion granted to the government and the limitation placed upon the district courts by 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1). These provisions merely grant the prosecutor discretion; the government has no duty to make such a motion unless it has entered into a plea agreement with the defendant that creates such a duty. See  id. at 185, 112 S.Ct. 1840 (observing that "in both § 3553(e) and § 5K1.1 the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted").

-16-

*U.S. v. Wolf* 270 F.3d 1188, 1190 (C.A.8 (Iowa),2001).  Absent a motion by the government

pursuant to § 5K1.1, "a district court generally lacks the authority to grant a downward departure

based on a defendant's substantial assistance.*" U.S. v. McDonald* 298 F.3d 1020, 1021 (C.A.8

(Iowa),2002)

       The Defendant was arrested in July 2011 as a result of an Undercover Officer being

introduced to the Defendant and a controlled purchase of methamphetamine taking place. (PSR,

¶6-13).  The Defendant then agreed to co-operate with law enforcement to negotiate a purchase

of meth from his source Francisco Velasquez, which was accomplished in September 2011 and

Velasquez was arrested. (Id., ¶15-19).   After the arrest of Velasquez it was determined that

Velasquez had delivered more meth to the Defendant than the Defendant had delivered to the

police after the deliveries from Velasquez to the Defendant had taken place.  (Id., ¶20-21).  As a

result of Velasquez's statement to the police after his arrest officers went to the Defendant's

residence.  The Defendant was not there and the Defendant was contacted by law enforcement

and instructed to return home.  Before coming home a co-defendant called the Defendant's ex-

wife and instructed her to retrieve a black bag from the bath room. The officers were allowed to

enter the bathroom with her and the black bag was retrieved which contained 342.9 grams of

meth. (Id., ¶22-27).

       When the Defendant testified he admitted that he had not been truthful to the DEA (R1.

1:32:43) and that, working in his capacity as an informant for th DEA,  he had kept one pound of

the meth delivered to him by Velasquez without telling the police (R1. 1:33:29).  He also

admitted that he kept the drugs in order to sell them. (R1. 1:27:16).  The Defendant admitted that

Velasquez was severely beaten at the Washington County Detention Center.  He denied that he

had anything to do with the beating but admitted that Velasquez was beaten by someone he knew. The Defendant admitted that an investigation was conducted and he was moved from WCDC as a result. (R1. 1:35:23). The Defendant testified that he knew he was not going to get the 5K reduction after Velasquez was injured in the county jail (R1. 1:44:33) but at the time of sentencing he was still "hoping" he would receive it. (R1. 1:45:05).

Tim Snively testified that he felt his client had provided substantial assistance (R2. 09:59) but the Plea Agreement specifically provided that the government did not promise to file a 5K1.1 or Rule 35(b) motion.  (R2. 0:10:48). The Plea Agreement did provide that the government agreed to "advise the probation officer and the court of the extent and nature of the defendant's cooperation" (ECF No. 36, ¶20) and this cooperation is reflected in the PSR report.  Snively testified that absent the withholding of the dope and the fight in the jail he would have expected the 5K to have been filed. (R2. 22:17).   Snively testified that he never intended to file anything in regards to the government not filing a 5K motion because he "was very confident, based on my conversations with the United States Attorney, that if I would have filed that motion, they would have filed an obstruction motion and they would have tried to pile another pound of meth on him, is what I thought, so it was a strategic decision that there would have been some backlash for filing that if I had there was a chance he would have got a lot more time and I felt if I filed the motion, there was zero chance that would have been granted."  (R2:0:23:39 to 0:24:20)

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *U.S. v. Rice*, 449 F.3d 887 at 897 (*quoting Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). See also *Francis v. Miller*, 557 F.3d 894 (8th Cir. 2009) (trial strategy decision, if reasonable at the time, cannot support ineffective assistance

-18-

claim even if, in hindsight, better choices could have been made).  It was a logical strategic choice to not contest the loss of any 5K recommendation where his client had tried to abscond with a pound of meth while cooperating with law enforcement and where the government believed the Defendant was implicated in the severe beating of a co-defendant, and  in light of the fact that his client was sentenced at the very bottom of the sentencing range.

**C.  Motion to Reduce Sentence:**

The Defendant has also file a Motion to Reduce Sentence (ECF No. 89).  His argument seems to be that  he was not given proper credit for his jail time. (Id., p. 3).  He asserts his claim under Rule 36 and believes that his sentence should be reduced to 175 months. (Id., p. 4).

Rule 36 of the Federal Rules of Criminal Procedure provides that:

> After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment order, or other part of the record, or correct an error in the record arising from oversight or omission.

Claims concerning administering or calculating sentences are properly brought in a petition pursuant to 28 U.S.C. § 2241 as such claims challenge the execution of a defendant's federal sentence and not its validity or legality. A district court does not determine the appropriate credit for time spent in official detention when sentencing criminal defendants. *Wilson*, 503 U.S. at 333. This responsibility lies with the Attorney General, who has delegated the authority to the BOP.

Administrative exhaustion is required prior to challenging the computation of a sentence and the application of jail time credit. *United States v. Bayless*, 940 F.2d 300, 304-05 (8th Cir. 1991); *United States v. Checchini*, 967 F.2d 348, 350 (9th Cir.1992) (prisoner must exhaust

administrative remedies before seeking judicial review of Attorney General's sentence computation); *see also Wilson*, 503 U.S. at 335.  Defendant should contact the BOP regarding his issues. Only after defendant has properly exhausted his available administrative remedies and still remains unsatisfied, he can then seek review of the BOP's decision by filing a petition under § 2241 in the appropriate district court. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir.2009).

Rule 36 does not apply to the Defendant's allegation and even if the court were to consider the claim as being made under 2241 it is without merit because it is filed in the wrong jurisdiction and the Defendant has not shown that he has exhausted his administrative remedies.

## D.  Certificate of Appealability:

When the district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997). In this case the Defendant has not made a substantial showing of the denial of a constitutional right. Accordingly, this Court should deny any request for a certificate of appealability.

## III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C.

§2255 (ECF No. 75) be **DENIED and DISMISSED with PREJUDICE**.

I further recommend that the Motion to Reduce Sentence (ECF No. 89) be **DENIED.**

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 5th day of  May 2014.


/s/ J. Marschewski
HON.  JAMES R. MARSCHEWSKI
U. S. MAGISTRATE  JUDGE